United States Courts
Southern District of Texas
FILED
DEC 15 2004
Michael N. Milby, Clerk of Court

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| C. SCOTT EVANS | § § | |
| VS. | § § | CIVIL ACTION NO. G-04-713 |
| ELIZABETH WHITLEY AND MID-ATLANTIC SOLUTIONS, INC. | § § § | |

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, MOTION TO DISMISS FOR IMPROPER VENUE, AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Defendants, Mid-Atlantic Solutions, Inc. and Elizabeth Whitley, file this Motion to Dismiss for Lack of Personal Jurisdiction, Motion to Dismiss for Improper Venue, and Motion to Dismiss for Failure to State a Claim, as authorized by Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), respectively.

## I. INTRODUCTION

On information and belief, Plaintiff, C. Scott Evans ("Evans"), is an individual residing in Texas.

On November 1, 2004, Evans sued Defendants, Elizabeth Whitley ("Whitley") and Mid-Atlantic Solutions, Inc. ("MAS") for libel, in the 130th Judicial District Court of Matagorda County, Texas. The case is styled Cause No. 04-E-0599-C; <u>C. Scott Evans v. Elizabeth Whitley and Mid-Atlantic Solution [sic], Inc.</u>

Defendants timely filed their Notice of Removal to the United States District Court for the Southern District of Texas, Galveston Division, on December 8, 2004.

Whitley is an individual who resides and works in Virginia. She does not do business in Texas. MAS is incorporated in, and has its principal place of business in, Virginia. MAS does not do business in Texas. See Affidavit of Elizabeth Whitley, attached as Exhibit A.

1

The subject of the lawsuit is a letter that MAS authored and sent to various recipients in a number of states, dated July 21, 2004. A copy of the letter is attached as Exhibit B.

## II. SUMMARY OF ARGUMENT

**Lack of Personal Jurisdiction.** Evans' lawsuit should be dismissed because the Court lacks personal jurisdiction over Defendants. Federal courts do not have jurisdiction over a nonresident defendant unless the nonresident defendant has purposefully established "minimum contacts" with the forum state, and the exercise of jurisdiction comports with "fair play and substantial justice." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76, 105 S.Ct. 2174, 2183-84 (1985); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92, 100 S.Ct. 559, 564 (1980); Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945). Evans does not meet those standards, and the lawsuit should therefore be dismissed pursuant to FED. R. CIV. P. 12(b)(2) because the Court's assumption of jurisdiction will violate Defendants' due process rights under the United States Constitution.

**Improper Venue.** Evans' lawsuit should be dismissed because venue in this district is improper. In such a case, a court may dismiss the action upon timely objection or, in the interest of justice, transfer the case to a district where the action could have been brought. As the facts show Texas to be an improper venue, the lawsuit should be dismissed on that basis. 28 U.S.C. § 1406(a); FED. R. CIV. P. 12(b)(3).

**Failure to State a Claim.** Evans' lawsuit should be dismissed because it fails to state a claim. The sole cause of action alleged in the Original Petition is libel, but Evans has not alleged that a recipient of the purportedly libelous communication understood the communication to be defamatory, as is required under Texas law. Accordingly, the Petition fails to state a claim for which relief may be granted. The case should therefore be dismissed pursuant to FED. R. CIV. P. 12(b)(6).

2

## III. ARGUMENT AND AUTHORITIES

A. **This Court Lacks Personal Jurisdiction Over Whitley and MAS**

1. **The Texas Long-Arm Statute is Not Implicated Because Plaintiff Has Not Alleged an Actionable Tort.**

A district court sitting in diversity applies the law of the forum state in determining whether personal jurisdiction is proper. See Prejean v. Sonatrach, Inc., 652 F.2d 1260, 1264 (5th Cir. 1981); FED. R. CIV. P. 4(e). The Texas Civil Practice and Remedies Code authorizes the exercise of personal jurisdiction over a nonresident who "commits a tort in whole or in part in this state." TEX. CIV. PRAC & REM. CODE § 17.042(2) (Vernon 1997).

The exercise of personal jurisdiction under the aegis of § 17.042 is improper because Evans has not pled an actionable tort, and therefore the long-arm statute is not implicated. Evans attempts to come within the scope of the statute by alleging that a tort (libel) arises because:

> Defendants sent a letter dated July 21, 2004 to FEWA [Federation of Employers & Workers of America] members and other H-2B employers in Texas that personally defamed Evans in various ways. In particular, Defendants falsely stated that Evans was engaging in the illegal sale of excess visas, that the Monterrey Consulate had suspended Evans personally for that reason and that Evans was using FEWA as a cover for his defunct H-2B service company, C. Scott, Inc.

Plaintiff's Original Petition, at p. 4 (referenced letter is attached hereto as Exhibit B). To recover for libel, however, Evans must allege and prove that a recipient of the subject communication did, in fact, understand that the communication was defamatory, in order to establish that an actionable publication occurred. See, e.g., Diesel Injection Sales & Services, Inc. v. Renfro, 656 S.W.2d 568, 573 (Tex.App.--Corpus Christi 1983, writ ref'd n.r.e.); Houston Belt & Terminal Ry. Co. v. Wherry, 548 S.W.2d 743, 751 (Tex. Civ.App.--Houston [1st Dist.] 1976, writ ref'd n.r.e.). He has not alleged this element.

Evans has therefore failed to make a prima facie showing that a tort occurred in whole or in part in Texas. Consequently, there is no personal jurisdiction over Whitley or MAS pursuant to the Texas statute relied upon to confer such jurisdiction.

2. **Defendants Do Not Have the Minimum Contacts with Texas Sufficient to Confer Jurisdiction Without Violating Due Process.**

Even assuming that the Texas long-arm statute was implicated, the lawsuit should be dismissed because Defendants' contacts with Texas are insufficient to authorize the exercise of jurisdiction without violating due process. Fundamentally, the Texas long-arm statute only authorizes the exercise of personal jurisdiction "to the extent allowed by the Due Process Clause of the Fourteenth Amendment." Panda Brandywine Corp. v. Potomac Elec. Power Co., 253 F. 3d 865, 867 (5th Cir. 2001) (per curiam).

The Due Process Clause of the United States Constitution requires that before a forum can exercise such jurisdiction, the defendants must have purposefully availed themselves of the benefits and protections of the forum state by establishing "minimum contacts" in the forum. Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818-19 (8th Cir. 1994); see Asahi Metal Indus. Co. v. Superior Ct., 480 U.S. 102, 109, 107 S.Ct. 1026, 1030 (1987). The contacts must be such that the defendants should "reasonably anticipate being haled into court" there. World-Wide Volkswagen, 444 U.S. at 296, 100 S.Ct. at 567.

In measuring minimum contacts, a court should consider the following: (1) the nature and quality of the contacts with the forum state, (2) the quantity of the contacts, (3) the relation of the cause of action to the contacts, (4) the interest of the forum state in providing a forum for its residents, and (5) the convenience of the parties. Bell Paper Box, 22 F.3d at 819. The relation of the cause of action to the contacts (third factor above) requires a showing that the Court has either specific jurisdiction or general jurisdiction over Whitley and MAS.

4

### a. The Court lacks specific jurisdiction over Whitley and MAS.

This Court cannot exercise specific jurisdiction over nonresidents unless the litigation resulted from alleged injuries that arise out of or relate to the defendants' activities, *and* their activities were "purposefully directed" to the forum state. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872 (1984). There can be no specific jurisdiction over Whitley and MAS because these Defendants did not purposefully direct their activities to Texas.

The mere act of sending of a letter to nationwide recipients, some of whom were located in Texas, is not sufficient to show that Defendants should have reasonably anticipated being haled into court in this state. "[A]n exchange of communications between a resident and a nonresident in developing a contract is insufficient of itself to be characterized as purposeful activity invoking the benefits and protection of the forum state's laws." Stuart v. Spademan, 772 F.2d 1185, 1193 (5th Cir. 1985). The court in Stuart held that the nonresident's contacts were insufficient to provide a basis for specific jurisdiction. The same result should be reached here.

Moreover, the fact that a letter writer might have foreseen that comments made in a letter might have some effect in the state where the letter's recipient is located is not a "sufficient benchmark" for specific jurisdiction. See Panda Brandywine, 253 F.3d at 869 (nonresident power company which divested certain Texas assets and thereby allegedly caused injury in the state was not subject to personal jurisdiction) (citing Burger King, 471 U.S. at 474, 105 S.Ct. 2174 and Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 212 (5th Cir. 1999)).

Comparing the case before it with a libel case (Calder v. Jones, 465 U.S. 783, 789, 104 S. Ct. 1482 (1984)) that involved the allegedly libelous effects of certain Florida defendants' conduct on California plaintiffs, the Fifth Circuit in Panda observed that the mere "effect" of one's conduct "is not a substitute for a nonresident's minimum contacts that demonstrate

5

purposeful availment of the benefits of the forum state." Id. A nonresident cannot be "subject[ed] to jurisdiction in Texas for an intentional tort simply because the plaintiff's complaint alleged injury in Texas to Texas residents regardless of the defendant's contacts . . . ." To do so, the Court said, would force the nonresident "to appear in Texas to defend the suit 'no matter how groundless or frivolous the suit may be' [and] would completely vitiate the constitutional requirement of minimum contacts and purposeful availment." Id. at 870 (citing Wallace v. Herron, 778 F.2d 391, 395 (7th Cir. 1985)). Thus, personal jurisdiction cannot be founded upon conduct that might happen to have an effect in the state, without evidence of other conduct which would demonstrate that the defendant did something to purposefully avail itself of the privilege of doing business there.

The only conduct Evans alleges is the sending of the letter of July 21, 2004. There is no allegation, nor is there any evidence, that Defendants conducted business in Texas, much less purposefully availed themselves of the privilege of doing business in this state. See Whitley Affidavit, Exhibit A.

The allegations of the plaintiffs were insufficient to permit personal jurisdiction in Panda and in Stuart. Evans' allegations are no more sufficient in this case. The Court should dismiss on that basis.

b. **The Court lacks general jurisdiction over Whitley and MAS.**

This Court cannot exercise general jurisdiction over Whitley and MAS unless there are continuous and systematic contacts between them and Texas. Helicopteros, 466 U.S. at 416, 104 S.Ct. at 1873. This Court does not have general jurisdiction over Whitley and MAS because they have not had the required continuous and systematic contacts with the State of Texas.

The sole act alleged by Evans in his Original Petition is the mailing of the July 21, 2004 letter. Neither Whitley nor MAS conduct business in Texas, however. Neither has appointed an

6

agent for service in Texas. Neither has an office in Texas. Neither has any employees working in Texas on their behalf. Neither of them sell any kind of product or service in Texas. Neither of them recruit workers in Texas. MAS does not advertise in Texas trade journals, and does not exhibit or otherwise participate in industry trade shows in Texas. MAS has no clients that are based in Texas; more than 90% of MAS' business is concentrated in six states along the eastern seaboard of the United States. One of MAS' clients, The Brinkman Group, has some branch offices in Texas, but the work MAS does for this client is limited to receiving documentation and information from the company's headquarters office in Pennsylvania and working with company personnel located there and in Maryland. See Whitley Affidavit, Exhibit A.

These facts show that neither Defendant has the required continuous and systematic contacts with the State of Texas which would support a finding that this Court has general jurisdiction over them. Given the lack of general jurisdiction, this Court should conclude that it lacks any personal jurisdiction over Whitley or MAS based upon (nonexistent) continuous and systematic contacts.

  c.  **The five minimum contacts factors do not support personal jurisdiction.**

  1.  The nature and quality of Defendants' contacts with Texas are minimal, directly involving just the letter of July 21, 2004.

  2.  The quantity of contacts is minimal, as it involved just the July 21, 2004 letter.

  3.  There is no basis for specific jurisdiction based solely on the sending of the letter. Panda, supra; Stuart, supra. There are no systematic and continuous contacts between either Defendant and Texas, and thus there can be no basis for finding general jurisdiction. Helicopteros, supra.

  4.  Texas has no interest in providing a forum for a resident who has not alleged an actionable tort.

7

5.  It would be inconvenient to litigate this case in Texas because the Defendants, who are both residents of Virginia, are located in Virginia, they do not do business in Texas, they have no reason to be in Texas, and there are potential witnesses in the office of MAS who are situated in Virginia, not Texas. Litigating in Texas would require Defendant Whitley and others at MAS to divert time away from the business of MAS which would be avoided if the case were heard in Virginia, and the Defendants would be burdened with increased costs associated with litigation in Texas as opposed to Virginia. See Whitley Affidavit, Exhibit A.

Neither Whitley nor MAS have purposefully established "minimum contacts" with the State of Texas, and the minimum contacts factors do not support personal jurisdiction. For these reasons, this Court lacks personal jurisdiction over Whitley and MAS and should dismiss the case on that basis.

### 3. Jurisdiction Over Whitley and MAS Offends Traditional Notions of Fair Play and Justice.

This Court's assumption of jurisdiction over Whitley and MAS will offend traditional notions of fair play and substantial justice. Int'l Shoe, 326 U.S. at 316, 66 S.Ct at 158. Factors to consider include: (1) the burden(s) that litigation in Texas would place upon Whitley and MAS; (2) the interests of the forum state in litigating the dispute; (3) Evans' interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversy; and (5) the shared interest of the several states in furthering fundamental social policies. Asahi Metal, 480 U.S. at 113, 107 S.Ct. at 1032-33.

#### a. The assumption of jurisdiction places an unfair burden on Whitley and MAS.

This Court's assumption of jurisdiction over Whitley and MAS will place an unfair burden on them because they are located in Virginia, and do not do business in Texas. Litigating

the case in Texas would unfairly burden the Defendants in terms of time, expense, and other matters as discussed in section 2.c above, and in Whitley's affidavit.

### b. Texas has no interest in the outcome of this dispute.

If the Court denies this Motion, it will assume jurisdiction in a dispute in which the forum has no legitimate interest. As noted, Whitley and MAS are not residents of Texas, and do no business here. Moreover, Evans has failed to state a claim for libel, and because Texas would have no interest in resolving a claim that is not actionable, it cannot have any interest in resolving this lawsuit.

### c. Evans will not be foreclosed from seeking a remedy for his alleged injury in a more appropriate district.

This Court's refusal to assume jurisdiction over Whitley and MAS will not prevent Evans from prosecuting his suit because he could seek the same remedy in a United States District Court for the Western District of Virginia.[1]

### d. Dismissal for lack of personal jurisdiction would promote judicial efficiency.

This Court's refusal to assume jurisdiction over Whitley and MAS will promote judicial efficiency because there is a more appropriate and convenient district in which the lawsuit could be litigated. Hearing this case in Virginia rather than Texas would decrease litigation costs because there would be easier and cheaper access to relevant witnesses, documents, and records, as many of the key witnesses, and records pertaining to the subject letter, are located in Virginia, and not Texas.

---

[1] Venue is proper in a United States District Court for Western District of Virginia under 28 U.S.C. §1391(a)(1), which provides that in a diversity action, the lawsuit may be brought in a district where any defendant resides, if all defendants reside in the same state. Both Defendants reside in Virginia (see Whitley Affidavit); and both reside in the Western District of Virginia. Accordingly, the Western District is a proper venue.

e. **The underlying lawsuit does not further any substantive policy interests.**

This Court's assumption of jurisdiction over Whitley and Evans will not further any substantive policy interests of the several states. This case concerns an alleged tort which, even if it were properly pled, does not trigger constitutional issues or questions. It does not involve questions of interstate commerce. Nor are there allegations regarding the abuse or applicable scope of individual personal liberties.

As shown by the facts discussed above, any assumption by this Court of jurisdiction over Whitely and MAS violates their due process rights as guaranteed by the Fifth Amendment of the United Stated Constitution because: (1) Defendants have insufficient contacts with the State of Texas and (2) maintenance of the action in this Court will offend traditional notions of fair play and substantial justice. World-Wide Volkswagen, 444 U.S. at 291-92, 100 S.Ct. at 564.

**B.  Venue in this Court is Improper**

If an action is filed in an improper judicial district, the court may dismiss the action upon timely objection or, in the interest of justice, transfer the case to a district where the action could have been brought. 28 U.S.C. § 1406(a); FED. R. CIV. P. 12(b)(3).

This Court should dismiss this case because Evans' claim does not have a substantial connection to the State of Texas. See 28 U.S.C. § 1391(a)(2); First of Mich. Corp. v. Bramlet, 141 F.3d 260, 263 (6th Cir. 1998); Setco Enters. v. Robbins, 19 F.3d 1278, 1281 (8th Cir. 1994). Evans has failed to allege that a tort even took place in Texas, let alone that a substantial part of the events giving rise to his alleged injury occurred in this forum.

**C.  The Petition Fails to State a Claim**

To recover for libel, Evans must allege that at least one recipient of the subject communication did, in fact, understand that the communication was defamatory, in order to establish that an actionable publication occurred. See, e.g., Diesel Injection Sales, supra, 656

10

S.W.2d at 573; Houston Belt Terminal Ry., supra, 548 S.W.2d at 751. Evans has not alleged this necessary element of a libel cause of action, and as such, his claim is unactionable. The lawsuit should be dismissed for failure to state a claim upon which relief can be granted under FED. R. CIV. P. 12(b)(6).

## IV. REQUEST FOR AN EVIDENTIARY HEARING

Defendants request an evidentiary hearing on the motions asserted herein.

## V. CONCLUSION

For the reasons stated, Defendants ask the Court to dismiss the lawsuit against them for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted.

Respectfully submitted,

**GILBERT & GILBERT**

By: _John R. Gilbert / Laurence P. Hom by permission_
John R. Gilbert
State Bar No. 07898500
SDOT No. 3754
222 North Velasco
P.O. Box 1819
Angleton, TX 77516-1819
(979) 849-5741
(979) 849-7729

ATTORNEY-IN-CHARGE FOR DEFENDANTS,
MID-ATLANTIC SOLUTIONS, INC. and
ELIZABETH WHITLEY

OF COUNSEL:
GILBERT & GILBERT
Lawrence P. Hampton
State Bar No. 08875500
SDOT No. 8123
222 North Velasco
P. O. Box 1819
Angleton, Texas 77516-1819
(979) 849-5741
(979) 849-7729 Fax

OGDEN, GIBSON, WHITE, BROOCKS,
   & LONGORIA, LLP
William W. Ogden
State Bar No. 15228500
SDOT No. 2072
2100 Pennzoil South Tower
711 Louisiana
Houston, Texas 77002
(713) 844-3000
(713) 844-3030 Fax

## CERTIFICATE OF SERVICE

I hereby certify that in accordance with the Federal Rules of Civil Procedure, a true copy of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Motion to Dismiss for Improper Venue, and Motion to Dismiss for Failure to State a Claim has been served on the following counsel of record on this the 15th day of December, 2004:

Christopher W. Byrd
Attorney at Law
1177 West Loop South, Ste. 700
Houston, Texas 77027

G.P. Hardy, III
Attorney at Law
1177 West Loop South, Ste. 700
Houston, Texas 77027

JOHN R. GILBERT / Lawrence P. Hampton
by permission

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| C. SCOTT EVANS | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. G-04-713 |
| | § | |
| ELIZABETH WHITLEY AND | § | |
| MID-ATLANTIC SOLUTIONS, INC. | § | |

### AFFIDAVIT OF ELIZABETH WHITLEY

1.  "My name is Elizabeth Whitley. I am over eighteen (18) years of age, of sound mind, and fully capable of making this Affidavit. All of the facts, information and assertions set forth in this affidavit are of my own personal knowledge and are, to the best of my knowledge, true and correct.

2.  On November 17th, 2004, I received a copy of a citation and petition from the Texas Secretary of State notifying me that I had been sued. The lawsuit was filed on November 1, 2004, in the 130th Judicial District Court of Matagorda County, Texas by C. Scott Evans alleging libel. The case is styled Cause No. 04-E-0599-C; *C. Scott Evans v. Elizabeth Whitley and Mid-Atlantic Solution, Inc.*.

3.  On November 17th, 2004, Mid-Atlantic Solutions, Inc. ("MAS") also received a copy of a citation and petition from the Texas Secretary of State notifying it that MAS had also been sued in this same lawsuit and on the same grounds.

4.  I am a resident of the State of Virginia and live at 180 Emblys Gap Road, Roseland, Virginia 22967. I have been a Virginia resident for 25 years.

5.  I do not reside in nor do I conduct business in the State of Texas.

6.  I have not appointed an agent for service on my behalf in the State of Texas.

7.  I am also the President of Mid-Atlantic Solutions, Inc. ("MAS"), located at 650 Front St.

Lovington, Virginia, 22949, a company I founded. I have been President of MAS for 2 years. I founded its predecessor, Mid-Atlantic Resources Association, Inc., in 1997, and was its General Manager and President.

8. MAS is incorporated in, and has its principal place of business in, the State of Virginia.

9. MAS is a foreign worker-based seasonal labor agency that provides labor to seasonal employers in the United States through the federal H-2 programs. Approximately 90% of its business is located in the Mid-Atlantic region of the United States of America.

10. MAS has no corporate presence in Texas.

11. MAS has no business offices, subsidiaries or employees in the State of Texas. MAS does not conduct business in the State of Texas. MAS has not appointed an agent for service in the State of Texas.

12. MAS has no clients in the State of Texas.

13. MAS' largest client is The Brickman Group, Inc. ("TBG"). TBG corporate headquarters are located in Langhorne, Pennsylvania. MAS receives information regarding TBG foreign labor requirements directly from TBG headquarters staff. MAS then prepares labor certification applications working directly with TBG's Vice President/General Counsel. Once completed, these documents are reviewed and approved by TBG's Vice President/General Counsel. MAS subsequently files visa petition applications with the completed H-2B labor certifications. TBG's Vice President/General Counsel is the signatory on all paperwork for TBG's H-2B program participation. TBG has four branch locations in Texas. Neither Elizabeth Whitley nor Mid-Atlantic Solutions, Inc., works directly with any TBG branch location in Texas or elsewhere.

14. MAS does not advertise in Texas trade journals. MAS does not exhibit or otherwise participate in industry trade shows in Texas.

15. MAS does not recruit workers in the State of Texas.

16. The subject of this lawsuit is a letter that I authored as President of MAS and sent to various recipients in 38 states including Texas.

17. Trying this lawsuit in the State of Texas rather than in the State of Virginia would result in a great burden on both MAS and me because it would require a significant amount of time away from our day to day responsibilities and regular business activities. Other MAS employees located in Virginia may be potential witnesses in this lawsuit. It would also increase expenses for MAS and me due to the costs of travel, hotel and related costs that would not be otherwise incurred if the case were heard in Virginia.

18. All of the above stated facts were also true and correct on November 1, 2004, the date on which this lawsuit was originally filed.

19. I am able to make this affidavit in both my individual capacity and as a representative of Mid-Atlantic Solutions, Inc.

FURTHER, AFFIANT SAYETH NOT."


SIGNED this 14TH day of December, 2004.

*Elizabeth Whitley*
Elizabeth Whitley,
President, Mid-Atlantic Solutions, Inc.

SWORN AND SUBSCRIBED to before me by the said ELIZABETH WHITLEY, this the 14th day of December, 2004, to which witness my hand and seal of office.

*Mary B. Beard*
Notary Public in and for the State of Virginia

My Commission expires: April 30, 2007

July 21, 2004

H2 Labor Coordinator
«Emp_Name»
«Emp_Add1» «Emp_Add2»
«Emp_City», «Emp_State» «Zip»

Dear H2 Labor Coordinator:

I hope that you will take a moment to read my letter. In fact, I urge you to read it. Your ability to meet your seasonal labor needs through the H2 program in the future may depend on it.

After the tragic events of 9-11 the US government began to pay close attention to all visa categories, especially the H2 program.

For example, the Immigration Enforcement and Control (ICE) authorities, the USDOL and State Department stepped up investigation of questionable practices involving the illegal sale or transfer of "excess visa capacity" – unused visas – this year. The US Consulate in Monterrey has suspended one H2 agent, Scott Evans, C. Scott, Inc. (also doing business as 'Federation of Employers and Workers of America – FEWA) for these unsavory practices. He is banned from crossing workers until 2005.

Another change which could impact your business is the State Department's recent announcement it terminated its visa reissuance service effective July 16, 2004. The program will end since it is impossible to domestically collect necessary biometric identifiers for 'reissued' visas which will be required for all visas this fall.

Other developments. The USDOL plans to transfer labor certification procedures to the Department of Homeland Security (DHS). In its place USDOL will begin a major H2 enforcement program. If it finds an H2 employer is not in compliance with representations made in his H2 application the employer will be disbarred from the program for up to three years.

And, of course, the biggest change in the H-2B program this year was the implementation of the 66,000-visa cap in March. H-2B visa issuance is based on the federal fiscal year cycle, which runs from October to September rather than on a calendar year. In 2004, H-2B visas were exhausted in March, approximately half way through the year.



Now is not the time to take chances with your labor supply! H2 entrepreneurs continue to pop up like dandelions after a rain. MAS has a proven record of success in obtaining labor certifications for its clients. We are among the largest H2 program agents. We process in excess of 5,000 workers each year from Mexico, Central America and South Africa.

Although it seems early, now is the time to get started for 2005. Unless your labor needs are in late spring or summer, we believe that H-2B visas, and workers, will be available in 2005. Even for early dates of need, though, careful advance planning will be required to avoid being shut out of the program. The government permits H-2B applicants to file 120 days before workers are needed. It will be important to take full advantage of the maximum application time.

You can expect responsive, personal service from MÁS. Our case management staff is experienced and effective at handling all aspects of H2 coordination, from prompt, accurate filing of government paperwork and reliable delivery of qualified workers through support for your employment relationship with your workers through the end of the season.

Please read about all MAS' H2 activities in the **Renewal Newsletter** enclosed with this letter.

I am sure that you will find, as hundreds of other H2 employers and thousands of H2 workers have found, that we are effective, efficient and ethical in meeting your labor needs. Please call us or email at www.maslabor.com to discuss how we can help your company.

Sincerely,


Elizabeth Whitley
President